## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TARIQ WYATT,                          :

       **Plaintiff**               :        **CIVIL ACTION NO. 1:23-509**

  **v.**                               :              **(JUDGE MANNION)**

JUDGE JENNIFER P. WILSON,   :
*et al.*,

       **Defendants**             :

FILED
SCRANTON

FEB 18 2025

PER_____ JKL _____
DEPUTY CLERK

## MEMORANDUM

Presently before the Court is *pro se* Plaintiff Tariq Wyatt's amended complaint in which he asserts causes of action under 42 U.S.C. §1983 for constitutional violations against Defendants: two (2) Judges of this Court, the current and former Governors of the Commonwealth of Pennsylvania, two municipalities, and counsel for the Pennsylvania Office of the Attorney General and the Commonwealth of Pennsylvania Department of Corrections who represented defendants in two prior civil actions Plaintiff filed in this Court. As Plaintiff is proceeding *in forma pauperis*, the Court has screened the amended complaint pursuant to 28 U.S.C. §1915(e)(2)(B). For the reasons set forth below, the Court will dismiss the amended complaint without granting Plaintiff leave to file a second amended complaint.

## I.    BACKGROUND

Plaintiff, a convicted and sentenced state prisoner, commenced this action by filing a complaint, which the Clerk of Court docketed on March 23, 2023. (Doc. 1.) Plaintiff named as Defendants the "Municipality of Commonwealth of Harrisburg" and the "Municipality of Commonwealth of Mechanicsburg." (*Id.* at 1.) Plaintiff's causes of action, which he asserted under 42 U.S.C. §1983, related to his belief that counsel from the Pennsylvania Attorney General's Office and the Governor's Office of General Counsel violated his rights under the First Amendment to the United States Constitution when they sent legal materials relating to two (2) of his cases, *Wyatt v. Hauser, et al.*, No. 1:22-cv-92 (M.D. Pa.) ("*Wyatt I*") and *Wyatt v. Mason, et al.*, No. 1:22-414 (M.D. Pa.) ("*Wyatt II*") (collectively, "*Wyatt I & II*"), to the mailing address for personal, nonprivileged mail, rather than the address for "legal mail." (*Id.* at 2–7.) For relief, Plaintiff sought, *inter alia*, injunctive, declaratory, and monetary relief. (*Id.* at 7.)

Plaintiff neither remitted the filing fee nor filed an application for leave to proceed *in forma pauperis* with his complaint. As such, an Administrative Order issued on March 23, 2023, requiring him to either remit the fee or file an application for leave to proceed *in forma pauperis* within thirty (30) days or risk dismissal of this action. (Doc. 3.) Plaintiff timely complied with this

Administrative Order by filing a certified application for leave to proceed *in forma pauperis* along with a certified prisoner trust fund account statement on April 13, 2023. (Docs. 4, 5.) On the same date, Judge Martin C. Carlson entered an Order which, *inter alia*, granted Plaintiff's application for leave to proceed *in forma pauperis*. (Doc. 6.)

After screening the complaint pursuant to 28 U.S.C. §1915(e)(2)(B), Judge Carlson entered a Report and Recommendation on April 14, 2023 (the "R&R"), recommending that the complaint be dismissed without prejudice to Plaintiff filing an amended complaint. (Doc. 7.) In recommending dismissal, Judge Carlson determined that the complaint violated Federal Rule of Civil Procedure 8 because it did not adequately inform Defendants of the causes of action asserted against them. (*Id.* at 9–10.) He pointed out that Plaintiff appeared to be suing the places where the state officials who allegedly aggrieved him worked, rather than suing the officials themselves. (*Id.* at 10.) This ran afoul of Section 1983, which only imposes liability on "person[s]" who commit constitutional violations while acting under color of state law. (*Id.* (citing 42 U.S.C. §1983)).

Plaintiff timely filed objections to the R&R, along with a supporting memorandum of law, on April 28, 2023. (Docs. 9, 10.) On August 24, 2023, Judge Jennifer P. Wilson entered an Order (1) overruling Plaintiff's

- 3 -

objections, (2) adopting the R&R in its entirety, and (3) dismissing the complaint without prejudice to Plaintiff filing an amended complaint within forty-five (45) days. (Doc. 12.)

Plaintiff timely filed an amended complaint, which the Clerk of Court docketed on September 19, 2023. (Doc. 14.) In the amended complaint, Plaintiff names as Defendants: Judge Wilson; Judge Carlson; Kimberly Adams, Esq. ("Adams"), Assistant Counsel for the Pennsylvania Department of Corrections; Jonathan M. Blake, Esq. ("Blake"), Deputy Pennsylvania Attorney General; former Pennsylvania Governor Tom Wolf;[1] current Pennsylvania Governor Josh Shapiro; and Pennsylvania Attorney General Michelle A. Henry ("Henry"), in their official and individual capacities, as well as the "Municipality of City of Harrisburg" and the "Municipality of City of Mechanicsburg." (*Id.* at 1, 4–7.)

Rather than start off his amended complaint with factual allegations, Plaintiff uses the first three (3) pages of the amended complaint to repeat his objections to the R&R and assert objections to Judge Wilson's August 24, 2023 Order. (*Id.* at 1–3.) Only after these objections does Plaintiff start to describe the alleged "conspiratorial deceit, twisting and bending [of] the law,

---

[1] Plaintiff incorrectly spells Governor Wolf's last name as "Wolfe" in the amended complaint. (Doc. 14 at 1, 6.) The correct spelling is used here.

. . . breaking [of] the law, . . . flux of constitutional violations, . . . [and] massive web of lies and false precedents" forming the basis of his claims against Defendants. (*Id.* ¶13.)

Plaintiff alleges that Blake and Adams violated his First Amendment right of access to the courts by sending legal correspondence pertaining to *Wyatt I & II* to the Department of Corrections ("DOC")'s mail processing center, Smart Communications, which is off-site from any of its state prisons. (*Id.* ¶¶17, 23, 24, 32, 48.) Mail intended for Plaintiff and received at Smart Communications is opened and copied outside his presence. (*Id.* ¶17.) In addition, there are delays in Plaintiff's receipt of legal mail sent to Smart Communications, "which could potentially cause many more issues for [his] future opposing responses" in *Wyatt I & II*. (*Id.*)

Along with these alleged constitutional violations by Blake and Adams relating to Wyatt's legal mail in *Wyatt I & II*, Plaintiff indicates that

> the actions which give rise to [his] claim[s] are comprised of three (3) very basic, and very [intentional lies], which is actually, in essence, two (2) lies, where one lie is being told twice, and to two (2) different people, the effect of which, is to cause new lies to be told and [false precedents] to be set, to confuse the masses, and to violate constitutional rights on a massive scale.

(*Id.* ¶28 (third and fourth use of brackets in original)). Because these "lies" and the mailing issues are affecting all Pennsylvania state inmates, Plaintiff requests that the Court give this case "class action status." (*Id.*)

- 5 -

Turning now to the alleged "lies," Plaintiff alleges that Adams and Blake told the first lie to Judges Wilson and Carlson when they informed the Judges that Plaintiff had invoked attorney-client privilege pertaining to them. (*Id.* ¶30.)[2] Plaintiff had never mentioned attorney-client privilege; instead, he had indicated that the "law" treated correspondence from opposing counsel in a case as privileged legal correspondence. (*Id.*) As a result of this "lie," "Judges" would "turn a deaf ear" to his arguments pertaining to the ongoing constitutional violations occurring with his incoming legal correspondence. (*Id.*)

The second "lie," according to Plaintiff, is one that was told twice, as such, it also constitutes the third lie. (*Id.* ¶31.) While this second/third lie is "equally damaging by itself," when it is "commingled together with the first lie, it has the propensity to lend false ground [sic] for false precedents." (*Id.*) The second/third lie Adams and Blake told to both Plaintiff and the Judges was that they were following DOC policies when sending Plaintiff legal mail, with said policies requiring them to send their mail to the off-site mail processing center. (*Id.* ¶32.) Plaintiff avers that the procedure actually requires counsel to send legal correspondence to the prison by using a

---

[2] Plaintiff believes that similar conduct occurred in other prisoner *pro se* cases. (*Id.* ¶30.)

control number. (*Id.*) By Adams and Blake stating that the procedure is different than this, Plaintiff believes that it

> completely closes the mind of the Judge to all arguments from Plaintiff pertaining to this argument, because, as the Judge believes he has a [pro se] plaintiff, whose [sic] not sure who is representing him, [and] he is challenging a policy that has already been declared to be constitutional], [and] when the third lie, which was the same lie, was told to the inmate, and the inmate indeed challenges the policy, all bets are off, and now the Judge is almost taking instruction from the "lawyers" [sic] Defendants.

(*Id.* (all bracket use, other than [sic], in original)).

Plaintiff complains that these "lies" have convinced Judges Wilson and Carlson to "turn a blind eye and a deaf ear towards" his arguments in *Wyatt I & II.* (*Id.* ¶33.) Plaintiff has raised the issue about Blake and Adams's mailing improprieties in *Wyatt I & II* by complaining to Judges Carlson and Wilson, but they have ignored his complaints. (*Id.* ¶¶15–17, 22.) In addition, Plaintiff indicates that even after he provided Judge Wilson with the law, told her that he was not invoking attorney-client privilege, and explained that Adams and Blake were lying about following DOC policy, she ordered the continued violation of his constitutional rights. (*Id.* ¶¶20, 22, 33.) Judge Wilson (and possibly Judge Carlson) have denied Plaintiff relief, asserted that he did invoke attorney-client privilege, determined that Blake and Adams were following DOC policy, and set and enforced a "false precedent." (*Id.* ¶33.)

This "false precedent" consisted of decisions, which do not cite to any "statute, law, rule, regulation, or policy," stating that Plaintiff had no right to attorney-client privilege with opposing counsel and correspondence from opposing counsel is not considered to be privileged correspondence. (*Id.* ¶34.) Plaintiff avers that other Judges are relying on these decisions when addressing claims by other state prisoners, which concerns Plaintiff because he believes that the "false precedent" "can only stand to become stronger." (*Id.*)

Plaintiff also alleges that Judge Carlson has "show[ed] . . . bias towards prisoner lawsuits" through his decisions in *Wyatt I*, particularly when he dismissed Plaintiff's motion for a default judgment. (*Id.* ¶14.) According to Plaintiff, Defendants in *Wyatt I* had not timely filed responses to the complaint after waiving service and, as such, Plaintiff believes that Judge Carlson should not have dismissed his motion. (*Id.* ¶15.) In addition, Plaintiff asserts that Judge Carlson ignored his requests to intervene in the case despite Blake "procrastinating every chance he gets[] . . . and refusing to comply with discovery demands." (*Id.*) Judge Carlson also purportedly ignored Plaintiff's request to address Blake's mailing improprieties when Plaintiff submitted a motion for an extension of time after he belatedly received mail from Blake. (*Id.* ¶17.) Plaintiff claims that instead of directing Blake to send mail directly

to the state prison, all Judge Carlson did was grant Plaintiff's motion and give him additional time to act. (*Id.*)

Plaintiff also complains about events in *Wyatt II*. Apparently, Judge Carlson issued a Report and Recommendation, which recommended that Plaintiff's official- and individual-capacity claims against Defendants in that case be dismissed. (*Id.* ¶18.) Plaintiff asserts that Judge Carlson issued this Report and Recommendation despite Plaintiff filing the instant case and complaining about Judge Carlson's actions in his original complaint. (*Id.* ¶19.)

The Clerk's Office apparently had to resend the Report and Recommendation to Plaintiff because the original envelope containing the document was returned as undeliverable. (*Id.*) Shortly after Plaintiff received the resent Report and Recommendation, he also received an Order from Judge Wilson which had adopted the Report and Recommendation. (*Id.*) In response to Judge Wilson's Order, Plaintiff filed a letter and motion for reconsideration, which Judge Wilson denied. (*Id.*) This denial meant that Plaintiff could not object to the Report and Recommendation, which he believes incorrectly recommended dismissal of his claims. (*Id.*)

As for Defendants Governor Wolf, Governor Shapiro, and Henry, Plaintiff asserts that they were either "at the first commencement of these

constitutional violations, or are now, the holders of office which either [Blake or Adams] worked under." (*Id.* ¶25.) Plaintiff believes that the actions of Blake, Adams, Judge Wilson, and Judge Carlson were done "at the behest" of Governor Wolf, Governor Shapiro, and Henry. (*Id.*) If Governor Wolf, Governor Shapiro, and Henry submit an affidavit indicating that (1) the actions described in the amended complaint were done without their knowledge and approval and (2) they disapprove of the mailing methods used by Blake and Adams, Plaintiff agrees to dismiss them from this action. (*Id.* ¶¶ 8–10.) However, if Plaintiff discovers that "the truth [is] . . . other than stated in [these] affidavit[s]," he will "immediately reinstate[]" them as Defendants. (*Id.*)

The final named Defendants are the Cities of Harrisburg and Mechanicsburg. (*Id.* at 1, 7.) Plaintiff avers that these Defendants are "the municipalities responsible for" the other Defendants. (*Id.* ¶ 11.) They are also "liable for [their] constituents such as judicial entities." (*Id.* ¶ 26.)

For relief, Plaintiff seeks a declaration stating that Defendants' actions violated his constitutional rights, a preliminary and permanent injunction requiring Judges Wilson and Carlson to be removed from any case involving him, including *Wyatt I & II*, a preliminary and permanent injunction prohibiting

the sending of correspondence relating to "open civil or other cases" to Smart Communications, and monetary damages. (*Id.* at 26–27.)

On September 20, 2023, this matter was reassigned from Judges Wilson and Carlson to the undersigned. (Unnumbered Docket Entry Between Docs. 14 and 15.) Plaintiff filed a motion for appointment of counsel on December 29, 2023 (Doc. 17), which the Court denied via an Order entered on February 16, 2024. (Doc. 19.)

## II.    STANDARD OF REVIEW

Because the Court previously granted Plaintiff leave to proceed *in forma pauperis*, the Court must examine whether the amended complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. §1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . (B) the action or appeal— (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably

meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). A complaint is malicious if, after "engag[ing] in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit," the Court determines that "the actions is an attempt to vex, injure or harass the defendant." *Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, No. 11-cv-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

As for the Court's analysis under Section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Therefore, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's operative complaint fails to state a claim, the court must liberally construe the allegations set forth in the operative complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's *pro se* filings liberally. This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))). Nevertheless, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Neither will "a formulaic recitation of the elements of a cause of action." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Moreover, when construing a *pro se* plaintiff's operative complaint, the Court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704

F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.    DISCUSSION

### A.    Plaintiff's Objections

As indicated above, Plaintiff's amended complaint starts with three (3) pages of objections, some pertaining to this case and others pertaining to actions by Judges Wilson and Carlson in *Wyatt I & II*. (Doc. 14 at 1–3.) Including these objections with his amended complaint is wholly improper. A complaint, including an amended complaint, is a document that must comply with several Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 8–11. Nowhere in those Rules does it state that a plaintiff may combine objections (or any other pleading, motion, or submission) with an amended complaint, much less objections to conduct in entirely separate actions, *i.e. Wyatt I & II*. While Plaintiff properly filed objections to Judge Carlson's R&R in this case, *see* 28 U.S.C. §636(b)(1) (allowing any party to file written objections to a report and recommendation), Judge Wilson already resolved those objections. To the extent that Plaintiff is dissatisfied with the resolution of those objections, he may file an appeal to the Third Circuit Court of Appeals at an appropriate time. Overall, because Plaintiff improperly

included objections with his amended complaint, the Court will strike those objections from the amended complaint.

## B.    Plaintiff's Request for "Class Action Status"

On numerous occasions in the amended complaint, Plaintiff refers to other inmates, other inmate plaintiffs, and a desire to proceed with a class action on behalf of other DOC inmate plaintiffs. (Doc. 14 ¶¶27–30, 33–34, 40, 43). As a *pro se* litigant, Plaintiff may not proceed in this case on behalf of others or a putative class. *See Murray v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent himself or herself pro se, a non-attorney may not represent other parties in federal court."). Instead, Plaintiff may only plead and conduct his own case personally or by counsel in this Court. *See* 28 U.S.C. §1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Murray*, 901 F.3d at 170 ("Section 1654 . . . ensures that a person may conduct his or her own case pro se or retain counsel to do so."); *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61

(2d Cir. 1990))). This principle also precludes non-attorney litigants from representing others through a class action. *See Hagan v. Rogers*, 570 F.3d 146, 158–59 (3d Cir. 2009) (explaining that "*pro se* litigants are generally not appropriate as class representatives"); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (unpublished) ("Lewis, who is proceeding *pro se*, may not represent a putative class of prisoners." (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) and *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975))). Therefore, Plaintiff's attempt to raise claims on behalf of other inmates and request for class action status are improper, and the Court will dismiss any claims brought on behalf of other inmates and strike Plaintiff's request for class action status.

### C.    Plaintiff's Claims Against Judges Wilson and Carlson

#### 1.    Plaintiff's *Bivens* Claims

Although Plaintiff indicates that he is proceeding under Section 1983 for a First Amendment violation in the amended complaint, the Court construes the amended complaint as containing claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against Judges Wilson and Carlson, two (2) federal judges, for allegedly violating Plaintiff's First and Fifth Amendment rights of access to

- 16 -

the courts. *See Iqbal*, 556 U.S. at 675–76 ("In the limited settings where *Bivens* does apply," it acts as "the 'federal analog to suits brought against state officials under [Section 1983].'" (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006))); *Lomax v. U.S. Senate Armed Forces Serv. Comm.*, 454 F. App'x 93, 95 n.1 (3d Cir. 2011) (unpublished) ("*Bivens* allows a plaintiff to bring a claim against federal officers acting under color of law for violations of that individual's constitutional rights." (citing *Bivens*, 403 U.S. at 397)); *see also Jarvis v. D'Andrea*, 599 F. App'x 35, 36 (3d Cir. 2015) (unpublished) (agreeing with district court's construction of plaintiff's complaint as asserting civil rights action under *Bivens*, rather than Section 1983, because defendant was a federal official and not a state official). As explained below, the Court will dismiss with prejudice Plaintiff's *Bivens* claims against Judges Wilson and Carlson.

In the first instance, *Bivens* does not extend to Plaintiff's access-to-the-court claims here. In *Bivens*, the United States Supreme Court concluded that a plaintiff could proceed on a claim for damages against federal officers for violating the Fourth Amendment. 403 U.S. at 397. Since then, the Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations," *Egbert v. Boule*, 596 U.S. 482, 486 (2022), and has

> only fashioned [two] new causes of action under the Constitution—first, for a former congressional staffer's Fifth

Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

*Id.* at 490–91.

Recently, the Supreme Court "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Id.* at 491 (quoting *Ziglar v. Abassi*, 582 U.S. 120, 135 (2017)). It has "framed the inquiry [of a proposed *Bivens* claim as proceeding in two steps." *Id.* at 492. First, the court asks "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Id.* (quoting *Ziglar*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

Here, and as the Third Circuit has explained, "[t]he Supreme Court has never recognized a *Bivens* remedy under the First Amendment." *Bistrian v.*

*Levi*, 912 F.3d 79, 95–96 (3d Cir. 2018) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)). This includes any First Amendment access-to-the-courts claim like Plaintiff asserts in this case. *See id.* (explaining that Supreme Court's decision in *Ziglar* abrogated the Third Circuit's prior decisions recognizing an implied right to sue federal officials for damages for First Amendment violations, which included *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981), which had "impl[ied] a *Bivens* remedy under the First Amendment for the denial of a prisoner's right of access to courts"); *Goldberg v. Ortiz*, No. 22-1954, 2023 WL 8064810, at *1 (3d Cir. Nov. 21, 2023) (explaining that because the Supreme Court has never recognized a *Bivens* remedy for a First Amendment violation, plaintiff's "access-to-the-courts claim is 'novel'" (quoting *Bistrian*, 912 F.3d at 95–96)). It also includes any potential Fifth Amendment access-to-the-courts claim Plaintiff is potentially asserting in this case. *See, e.g.*, *Jordan v. Barves*, No. 4:24-cv-356, 2024 WL 1585939, at *3 (M.D. Pa. Apr. 11, 2024) (explaining that "even if [plaintiff] could plausibly state a First and Fifth Amendment access-to-courts claim, such a claim would present a new *Bivens* context[, and] multiple courts within and outside this circuit, including this Court, have held that an extension of *Bivens* to this new context is unwarranted" (footnotes omitted)), *aff'd*, No. 24-2030, 2024 WL 4579248 (3d Cir. Oct. 25, 2024). Thus, because

Plaintiff's claim "arises in a new context," this Court cannot recognize a *Bivens* remedy if there are any "special factors counselling hesitation." *Ziglar*, 582 U.S. at 136 (citations and internal quotation marks omitted).

The Court finds that there are special factors indicating that Congress is better equipped to weigh the costs and benefits of allowing a damages action in a context like this one. To put it plainly, considering that "[t]he immunity of judges for acts within the judicial role is . . . well established" in the common law, *Pierson v. Ray*, 386 U.S. 547, 554 (1967), Congress is better equipped to weigh the costs and benefits of allowing a damages action against federal judges. *Cf. id.* (rejecting contention that by passing Section 1983, Congress intended to abolish judicial immunity). In addition, Plaintiff could file grievances with the DOC if he believes that the DOC's policy is unconstitutional. *See Ziglar*, 582 U.S. at 148 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action.") Accordingly, the Court concludes that Plaintiff's access-to-the-courts claims present a new *Bivens* context and that special factors weigh against recognizing a *Bivens* remedy for them.

### 2. Plaintiff's Official-Capacity *Bivens* Claims

Additionally, even if there was a recognized *Bivens* remedy for Plaintiff's access-to-the-court claims, he may not proceed against Judges

Wilson and Carlson on these claims. Plaintiff's attempt to sue Judges Wilson and Carlson in their official capacities is improper because a *Bivens* claim may only be brought against federal defendants in their individual capacities. *See Debrew v. Auman*, 354 F. App'x 639, 641 (3d Cir. 2009) (unpublished) ("[N]o [*Bivens*] claims could properly be brought against defendants in their official capacities."); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) ("[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity."). Moreover, Plaintiff's official-capacity *Bivens* claims against Judges Wilson and Carlson, are essentially claims against the United States, which are barred by the United States' sovereign immunity. *See Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (unpublished) ("An action against government officials in their official capacities constitutes an action against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." (citations omitted)); *Martinez v. United States*, 838 F. App'x 662, 664 (3d Cir. 2020) (unpublished) (concluding that plaintiff's *Bivens* claims against four (4) federal judges in their official capacities were barred by sovereign immunity); *Talley v. Wetzel*, No. 22-cv-1712, 2023 WL 5163289 (M.D. Pa. July 17, 2023) ("To the extent that Talley is seeking damages against the United States and Judge Savage in his official capacity

for constitutional violations, it is well settled that sovereign immunity bars *Bivens* actions against the United States and, by extension, against federal officials sued in their official capacities." (footnote omitted)), *report and recommendation adopted*, 2023 WL 11984013 (M.D. Pa. Aug. 24, 2023).

### 3.    Plaintiff's Individual-Capacity *Bivens* Claims

Judges Wilson and Carlson are entitled to absolute judicial immunity from Plaintiff's individual-capacity *Bivens* claims. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *see Mireles v. Waco*, 502 U.S. 9, 11–12 (1991), or are taken due to a conspiracy with others. *See Dennis v.*

*Sparks*, 449 U.S. 24, 27 (1980). Additionally, a judge's "[i]mmunity will not be forfeited because [the] judge has committed grave procedural errors, . . . because [the] judge has conducted a proceeding in an informal and ex parte manner[, or] . . . because the judge's action is unfair or controversial." *Gallas*, 211 F.3d at 769 (citations omitted).

Here, Plaintiff complains about the decisions of Judges Wilson and Carlson in *Wyatt I & II*. He disagrees with, *inter alia*, Judge Carlson's denial of his motion for a default judgment in *Wyatt I* (Doc. 14 ¶¶14, 15);[3] his lack

---

[3] Although ultimately impertinent to the Court's discussion of the Judges' absolute immunity, the Court notes that Plaintiff could not have obtained a default judgment simply because Defendants did not file a response to the complaint within sixty (60) days after waiving service. Although not referenced by Judge Carlson in his Order denying Plaintiff's motion for a default judgment, the Prison Litigation Reform Act ("PLRA") provides that a defendant is not obliged to file a response to a prisoner's civil rights action unless the district court orders the defendant to do so after finding "that the plaintiff has a reasonable opportunity to prevail on the merits." 42 U.S.C. §1997e(g)(2); *see Brown v. S.C.I. Somerset*, No. 3:22-cv-20, 2022 WL 1912914, at *1 (W.D. Pa. June 3, 2022) ("The PLRA does not permit inmates to obtain default judgments on a claim that a defendant has failed to respond to service (or waiver of service) of a complaint because service in itself does not trigger any duty to respond."). No Order with such a finding was entered here; as such, Defendants were not obliged to file a response in *Wyatt I*.

Plaintiff also could not have obtained a default judgment because he did not follow the proper procedure for obtaining a default judgment. Federal Rule of Civil Procedure 55, which governs the process for default judgments, has two (2) steps. First, a plaintiff must request that the Clerk of Court enter default against a nonresponding defendant. *See* Fed. R. Civ. P. 55(a)

*(footnote continued on next page)*

of intervention to address Blake's alleged procrastination and refusal to comply with Plaintiff's discovery demands in *Wyatt I*, despite Plaintiff's requests that Judge Carlson intervene (*id.* ¶15); his refusal to acknowledge Blake's violation of Plaintiff's First Amendment rights when Blake sent legal documents in *Wyatt I* to Smart Communications (*id.* ¶¶16, 17, 20); his issuance of a Report and Recommendation which recommended dismissal of Plaintiff's claims in *Wyatt II* (*id.* ¶18); and his issuance of the Report and Recommendation despite Plaintiff referencing him in his complaint in this case (*id.* ¶19.).[4] Plaintiff also complains about Judge Wilson, *inter alia*, ignoring his requests to intervene while Adams and Blake violated his First Amendment rights in *Wyatt I & II* (*id.* ¶¶16, 17, 20), adopting the Report and Recommendation in *Wyatt I* (*id.* ¶18), declining to hold a telephone

---

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024) ("Rule 55 provides a two-step process for default judgment. Step one is entry of default under Rule 55(a) . . . ."). Plaintiff never requested that the Clerk of Court enter default against Defendants in *Wyatt I*. Therefore, even if the PLRA allowed Plaintiff to seek a default judgment, his filing of a motion for default judgment without first seeking entry of default by the Clerk of Court was wholly improper.

[4] This allegation is frivolous. Plaintiff commenced the instant action on or about March 23, 2023. The dockets for *Wyatt I & II* show that Judge Carlson never issued a Report and Recommendation after the date Plaintiff filed his complaint in this case.

conference to discuss the mail issues (*id.* ¶20), and concluding that Adams and Blake were following the law when they sent legal mail to Plaintiff (*id.*). Although Plaintiff repeatedly asserts that these actions by Judges Wilson and Carlson were "contrary to law" and constituted an "abuse of discretion" (Doc. 14 ¶¶4, 5), these types of allegations, *i.e.*, where a plaintiff complains that the Judges' decisions were wrong, are not of the type that would bypass the Judges' absolute judicial immunity. *See Mireles*, 502 U.S. at 11–12 (explaining that judges retain their immunity even if their actions were legally incorrect, in bad faith, malicious, or corrupt).

The Court also recognizes that Plaintiff alleges that the actions by Judges Wilson and Carlson were "outside the scope of [their] authority." (Doc. 14 ¶6, 7.) However, all their actions occurred while they were presiding over Plaintiff's cases in *Wyatt I & II*, and all the acts complained of are those within the scope of the Judges' judicial authority. As such, Plaintiff's conclusory allegation is not entitled to any presumption of truth, and Judges Wilson and Carlson are absolutely immune from Plaintiff's claims against them in their individual capacities. Accordingly, the Court will dismiss Plaintiff's *Bivens* claims against Judges Wilson and Carlson.

### D.    Plaintiff's Claims Against the Cities of Harrisburg and Mechanicsburg

Plaintiff's allegations against the Cities of Harrisburg and Mechanicsburg are based on his mistaken belief that they "are the municipalities responsible for the [other] defendants." (*Id.* ¶11.) Although this Court is required to accept as true all of Plaintiff's well-pleaded facts in his complaint, "[t]he Court is not obligated to accept as true 'bald assertions,' *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), 'unsupported conclusions and unwarranted inferences,' *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are 'self-evidently false,' *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996)." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017), *aff'd*, No. 17-3184, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Plaintiff tries to create a link between the individual defendants and the two (2) municipalities where no relevant one exists. Judges Wilson and Carlson are members of the federal judiciary, Governors Wolf and Shapiro were, and are, Governors of the Commonwealth of Pennsylvania, and Blake, Adams, and Henry are all Commonwealth of Pennsylvania employees. Simply because these individuals work in the Cities of Harrisburg and Mechanicsburg does not mean that those municipalities are responsible for them. Instead, the Cities

of Harrisburg and Mechanicsburg are only responsible for employees of the Cities of Harrisburg and Mechanicsburg. Since no Defendant is employed by the Cities of Harrisburg and Mechanicsburg, and Plaintiff is once again attempting to sue those municipalities because the other Defendants work in those locations, the Court will dismiss Plaintiff's Section 1983 claims against the Cities of Harrisburg and Mechanicsburg.

### E.    Plaintiff's Claims Against Blake and Adams

Plaintiff believes that Blake and Adams violated his right of access to the courts because they have not mailed him legal documents in accordance with the DOC's mail policy and have "lied" to Judges Wilson and Carlson about the propriety of their practice of sending legal documents in *Wyatt I & II* to Smart Communications. *See, e.g.*, (Doc. 14 ¶¶16–17, 23–24, 29–35, 38, 43.) The Court will dismiss these claims.

### 1.    Section 1983

Plaintiff brings his access-to-the-courts claims against Blake and Adams through Section 1983, which is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

- 27 -

> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution or laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means

through which "to vindicate violations of federal law committed by state

actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa.

2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To

state a claim under §1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of

state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 2.    Plaintiff's Official-Capacity Claims for Money Damages

Plaintiff asserts his Section 1983 access-to-the-courts claims for

damages, declaratory, and injunctive relief against Blake and Adams in their

official and individual capacities. Regarding his claims for damages against

Blake and Adams in their official capacities, they are barred by the Eleventh

Amendment to the United States Constitution.

The Eleventh Amendment provides that "[t]he Judicial power of the

United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of

- 28 -

another State, or by Citizens or Subjects of any Foreign State." U.S. Const.

amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir.

2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). Eleventh

Amendment immunity extends to all state agencies, departments, and

entities "having no existence apart from the state." *Laskaris v. Thornburgh*,

661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an

agency of the Commonwealth of Pennsylvania, is entitled to the

Commonwealth's Eleventh Amendment immunity. *See* 71 P.S. §61(a) ("The

executive and administrative work of this Commonwealth shall be performed

by the . . . Department of Corrections . . . ."); *Lavia v. Pa., Dep't of Corr.*, 224

F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of

Pennsylvania's Department of Corrections is a part of the executive

department of the Commonwealth, it shares in the Commonwealth's

Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968

F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC). In addition, the Pennsylvania Attorney General's Office is entitled to the Commonwealth's Eleventh Amendment immunity. *See Malcomb v. Beaver Cnty. Pa. (Prothonotary)*, 616 F. App'x 44, 45 (3d Cir. 2015) (unpublished) (affirming district court's dismissal of Section 1983 claims against the Pennsylvania Attorney General's Office because it is "immune from [the plaintiff's Section] 1983 claims under the Eleventh Amendment"); *Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 97 (3d Cir. 2011) (unpublished) (same).

In this case, Blake and Adams are both state officials for purposes of Section 1983 because Blake is a Deputy Pennsylvania Attorney General and Adams is counsel for the DOC. A suit for monetary damages brought against a state official in their official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Thus, Plaintiff's official capacity claims against Blake and

Adams for monetary damages are actually claims against the Commonwealth, which is immune from such claims under the Eleventh Amendment. *See Will*, 491 U.S. at 66, 70–71.

There are, however, three (3) narrow exceptions to Eleventh Amendment immunity potentially applicable to Plaintiff's official-capacity claims for monetary damages. The first two (2) exceptions are (1) if the state waives its immunity or (2) Congress exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S. at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Neither of these exceptions apply here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia*, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not intend to abrogate a state's Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§1983 does not explicitly and by clear language indicate on its face an

intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States").

As for the third exception, the Eleventh Amendment does not bar a "suit[] against state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). Therefore, to the extent that Plaintiff is seeking prospective declaratory or injunctive relief relating to the sending of legal mail to him in *Wyatt I & II*, the Eleventh Amendment would not bar those claims against Blake and Adams in their official capacities. The Eleventh Amendment does, however, bar his claims for monetary damages against Blake and Adams in their official capacities.

### 3.    Plaintiff's Official-Capacity Claims for Declaratory and Injunctive Relief Against Adams

To the extent that Plaintiff is seeking to obtain prospective injunctive or declaratory relief against Adams, he cannot do so because *Wyatt II* is no longer an open case insofar as the undersigned dismissed it on July 29, 2024, and directed the Clerk of Court to close the case. *See Wyatt II*, Docs. 54, 55. In other words, there is no ongoing conduct to enjoin or declare unconstitutional, and there is "no hint in the record of any present or imminent

future harm from [Adams'] alleged conduct." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 699 (3d Cir. 1996); *see also CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013) (explaining that declaratory relief is "prospective in nature" and cannot support a claim for a past injury). Therefore, the Court will dismiss Plaintiff's official-capacity claims for injunctive or declaratory relief against Adams.

### 4. Plaintiff's Official-Capacity Claims for Prospective Declaratory or Injunctive Relief Against Blake as well as his Individual-Capacity Claims Against Blake and Adams

Concerning Plaintiff's access-to-the-courts claims against Blake and Adams in their individual capacities, as well as his official-capacity claims for prospective declaratory and injunctive relief against Blake, he has failed to state a claim for a denial of access to the courts upon which relief may be granted. The law surrounding an access-to-the-courts claim has been aptly set forth as follows:

> "The right of access to the courts is sourced from both 'the First and Fourteenth Amendments,' and is typically framed as a due process right in the inmate context, but in other contexts as 'an aspect of the First Amendment right to petition the Government for redress of grievances[.]'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 n.17 (3d Cir. 2018) (citations omitted). "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). There are two general categories of actionable federal claims based upon an alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

- 33 -

The first category is forward-looking claims. *Id.* The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.* The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category is backward-looking claims. *Id.* at 413–14. Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.* "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15. The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must establish an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.*

In the prison setting, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Rather, in the prison setting, actual injury is the loss of, or inability to pursue, a nonfrivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Id.* at 354–55. "Impairment of any *other* litigating capacity is simply one

of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (italics in [original]).

*Talley*, 2023 WL 51632389, at *8–9.

There are several problems with the merits of Plaintiff's access-to-the-court claims, the first of those being his belief that incoming mail was sent to him improperly or in a manner that violates the United States Constitution. To address this claim, the Court starts with DC-ADM 803, the DOC's mail policy, which has been described as follows:

> In September 2018, the DOC changed its mail policy regarding, among other things, how incoming privileged and nonprivileged mail was handled. According to the DOC, the changes were implemented to curb entry of illicit drugs into state prisons through the use of drug-soaked inmate mail. Under the new policy, nonprivileged prisoner mail was to be sent to the DOC's contracted processor—defendant Smart Communications, in St. Petersburg, Florida—who would scan the nonprivileged correspondence and provide an electronic copy that would be printed and delivered to the prisoners at their respective facilities.

> As for "privileged correspondence," the following system was implemented: (1) incoming privileged mail would be opened and inspected for contraband in the inmate's presence; (2) the incoming privileged correspondence would then be photocopied in the inmate's presence and a photocopy of the legal mail would be provided to the inmate; (3) prison officials would log the privileged correspondence in the "Legal Mail Log," which the inmate had to sign to receive the mail; (4) the original incoming privileged correspondence would then be placed into a sealed envelope inside a lockbox, ultimately to be "securely and confidentially destroyed."

> The constitutionality of the revised policy's treatment of privileged mail was swiftly challenged in federal court. Within a

matter of months, the DOC acquiesced and agreed that, beginning on April 6, 2019, the copying and retention of inmates' privileged correspondence would end. The use of Smart Communications for nonprivileged correspondence, however, remains a fixture of the DOC's current mail system.

*Travillion v. Pa. Dep't of Corr.*, No. 1:18-cv-2075, 2023 WL 6796538, at *2–3 (M.D. Pa. Oct. 13, 2023) (internal footnotes omitted).

As explained above, the DOC processes privileged and nonprivileged incoming mail differently under DC-ADM 803. Here, Plaintiff essentially argues that mail sent to him by Blake and Adams should have been considered as privileged mail, thus requiring the mail to be directly sent to him at the prison rather than to Smart Communications. He is mistaken.

DC-ADM 803 defines "Incoming Privileged Correspondence" as follows:

Incoming Privileged Correspondence is incoming inmate mail as described below:

a. Mail from an inmate's attorney that is either hand-delivered to the facility by the attorney or delivered through the mail system. This correspondence shall contain the attorney's issued control number and secondary authentication number, which was issued to the sender by the Department's Office of Chief Counsel, in order to be accepted, processed, and delivered to the inmate.

b. Mail from a court.

c. Mail from an elected or appointed federal, state, or local official *who has sought and obtained* a control number issued by the Department's Office of Chief Counsel. **NOTE:** Not all correspondence between an inmate and elected or appointed

- 36 -

> federal, state, or local official will require privileged correspondence processing. Control numbers will only be issued when the underlying matter involves matters related to a confidential investigation process or similar concerns.

DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual, Glossary of Terms (first emphasis added).[5] Presuming that Blake and Adams qualify as "elected or appointed federal, state, or local official[s]," their correspondence to in *Wyatt I & II* Plaintiff would only qualify as privileged under DC-ADM 803 if they applied for and obtained a control number from the DOC. *Id.* There is no **requirement** under DC-ADM 803, however, that they obtain a control number to correspond to Plaintiff. DC-ADM 803's lack of a requirement for Blake and Adams, as defense counsel, to obtain a control number is further illustrated by the policy's description of the procedures for processing incoming privileged mail, which states that "[a]n attorney, a court or an elected or appointed federal, state, or local official, or other approved entity **may** request a [control number] through the [DOC's]

---

[5] The Court takes judicial notice of the current version of DC-ADM 803, which became effective on August 10, 2020, and which is available on the DOC's public website at: https://www.pa.gov/agencies/cor.html (last visited January 24, 2025); *see also Irizzary v. Kauffman*, No. 4:22-cv-1892, 2023 WL 6147174, at *11 (M.D. Pa. May 15, 2023) ("The Court takes judicial notice of DOC policy 2020 DC-ADM 803 as a matter of public record." (citing *Leonhauser v. Long*, No. 11-cv-241, 2012 WL 398642, at *3 n.2 (M.D. Pa. Jan. 4, 2012))), *report and recommendation adopted*, 2023 WL 6143933 (M.D. Pa. Sept. 20, 2023).

public website . . . or by contracting Central Office by email . . . ." DC-ADM 803 §1.D.1.a.[6]

Pursuant to DC-ADM 803, the DOC would not consider correspondence from Blake and Adams to be incoming privileged mail because "it is not (1) mail from [Plaintiff's] attorney that was hand-delivered to the facility or identified with a control number; (2) mail from a court; or (3) mail from an elected or appointed federal, state, or local official who had sought and obtained a control number." *Spotz v. Wetzel*, No. 1:21-cv-1799, 2022 WL 743874, at *4 (M.D. Pa. Mar. 11, 2022). Instead, it would be treated as incoming nonprivileged mail, which would have to go to Smart Communications for processing. *See Bicking v. Pa. Dep't of Corr.*, No. 3:24-cv-422, 2024 WL 4367927, at *2 (M.D. Pa. Oct. 1, 2024) ("This court has consistently held that mail addressed to a plaintiff inmate from a defendant's

---

[6] In the amended complaint, Plaintiff asserts that prior to the 2020 revision of DC-ADM 803, it provided that a control number "must" be requested. *See* (Doc. 14 at 24–25 ("draw[ing] the courts [sic] attention" to the 2020 version of DC-ADM 803 where it states that a control number "may" be requested, and asserting that "before this '2020' revision, the word 'may' was ['must'], and therefore before this date anyone stating[] that they were following the policy[] were not only lying, but were also in direct violation of said policy." (third use of brackets in original)). Plaintiff provides no proof in support of this allegation. Nevertheless, it appears that the prior version of DC-ADM 803, which took effect in October 2018, did not state as Plaintiff alleges. *See Pa. Inst. Law Project v. Wetzel*, No. 1:18-cv-2100 (M.D. Pa. Oct. 30, 2018), Doc. 1-5 (attaching copy of version of DC-ADM 803, which became effective on October 3, 2018).

attorney is nonprivileged."); *see also Molina v. Kauffman*, No. 4:21-cv-38, 2022 WL 1122840, at *3 (M.D. Pa. Apr. 14, 2022) (rejecting plaintiff's argument that Court had directed defense counsel to obtain a control number, and explaining that "correspondence between counsel for Defendants and Plaintiffs is not privileged mail and must be sent to [the] DOC's mail processing facility, Smart Communication[s]"). Therefore, Blake and Adams were complying with DC-ADM 803 when they sent correspondence to Smart Communications rather than directly to Plaintiff in *Wyatt I & II*.

In the end, Plaintiff appears to have an issue with DC-ADM 803 lacking a requirement that Blake and Adams obtain a control number before sending correspondence in *Wyatt I & II* to him. More specifically, he appears to argue that this is unconstitutional based on several nonprecedential cases concluding that "legal mail" includes mail such as the mail he received from Blake and Adams in *Wyatt I & II* and legal mail must be opened in the presence of the inmate. *See* (Doc. 14 ¶37 (citing cases)). This argument is also unavailing because any challenge to the constitutionality of DC-ADM 803 would need to be asserted against the DOC, and not against any of the Defendants named in this case, who are simply following the DOC's policy for incoming mail. *But see Thompson v. Ferguson*, No. 19-cv-4580, 2020

WL 7872629, at *10 (E.D. Pa. Dec. 31, 2020) ("Thompson's allegations regarding the DOC's policy of classifying mail from the District Attorney's Office without a control number as non-legal mail, and opening it outside his presence, do not state a claim for an unconstitutional violation of his freedom of speech."). Further, and perhaps more importantly, the Third Circuit has already found that the DOC's policy (albeit in a prior version of DC-ADM 803) not to require federal, state, or local agency officials (or even the courts) to obtain a control number to send mail to state inmates did not violate the Constitution. *See Fontroy v. Beard*, 559 F.3d 173 (3d Cir. 2009). In reaching this conclusion, the Third Circuit expressed "concern[] that the Inmates cannot force attorneys and courts to obtain and use Control Numbers," noted that "some attorneys and all courts have refused the Inmates' repeated requests to do so," and "acknowledge[d] that these problems make the DOC's new mail policy a less-than-ideal means of accommodating the Inmates' important First Amendment rights." *Id.* at 180–81. Nevertheless, the Third Circuit pointed out that "alternatives are, in fact, available under the DOC's new policy," which was all the Supreme Court required in *Turner v. Safley*, 482 U.S. 78 (1987), and explained that:

> the Inmates have alternative means of ensuring that their First Amendment rights are not infringed upon. Control Numbers are easily obtained upon request and, when used, allow the Inmates to communicate with attorneys and courts just as they did under

> the DOC's old mail policy. In addition, the DOC treats hand-delivered court and attorney correspondence as Privileged Correspondence even without a Control Number, and attorneys can communicate with inmates by phone or in-person.

*Id.* at 180. Overall, while recognizing that the DOC conceded that its "new mail policy impinge[d] on the Inmates' First Amendment rights because at least some legal mail is opened and inspected outside of the Inmates' presence," the Third Circuit upheld the policy because it found that the policy was reasonably related to the DOC's legitimate penological interest to prevent contraband from entering its prisons. *Id.* at 178–80. Accordingly, Plaintiff's argument that Blake and Adams violated his right of access to the courts based solely on how they mailed documents to him in *Wyatt I & II* lacks merit.

In addition, even if there had been an issue with how Blake and Adams sent documents to him in *Wyatt I & II*, Plaintiff has still failed to state an actionable access-to-the-courts claim because he has not plausibly alleged that he suffered an actual injury insofar as he fails to identify a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts.

Looking first at *Wyatt I*, which is assigned to the undersigned, it is still ongoing, and there are motions for summary judgment currently pending. Plaintiff has not identified a simple arguable underlying claim that has been

blocked or lost by the alleged denial of access to the courts in this case. Moreover, the only allegation in the amended complaint relating to an arguably adverse event in the case is when Plaintiff alleges that he belatedly received a copy of a defense motion because it was first sent to Smart Communications. (Doc. 14 ¶ 17.) However, Plaintiff acknowledges that he sought an extension of time to respond to the motion due to its late receipt, and Judge Carlson granted the motion. (*Id.*) While Plaintiff points out that Judge Carlson apparently stated that no further extensions would be given unless compelling circumstances were shown, Plaintiff does not allege that he sought any further extensions due to delays in receipt of mail from Blake which were denied. The docket for the case also does not reflect any such requests or denials. Therefore, Plaintiff has failed to plead an actual injury in *Wyatt I*.

Regarding *Wyatt II*, as stated above, the undersigned dismissed Plaintiff's second amended complaint and directed the Clerk of Court to close the case via a Memorandum and Order issued on July 29, 2024. Although this matter is closed, Plaintiff identifies only two (2) alleged injuries due to his purported lack of access to the courts. The first of those injuries was when he did not receive Judge Carlson's Report and Recommendation on Defendants' motion to dismiss, due to it being returned to sender, until after

he received Judge's Wilson's Order adopting the Report and Recommendations and dismissing his official-capacity claims against Defendants with prejudice and his individual-capacity claims against Defendants without prejudice to him filing an amended complaint. (*Id.* ¶18) The second of those alleged injuries was when he claims to not have received an Order from Judge Wilson deeming a motion for reconsideration withdrawn due to his failure to file a supporting brief. (*Id.* ¶21.) These allegations are insufficient to state a plausible claim against Adams because she would not have been the one sending Plaintiff those documents, rather, it would have been the Clerk of Court. Furthermore, Plaintiff has not shown that these events resulted in a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts, especially considering that the Court ultimately determined that he failed to allege any Section 1983 claim upon which relief may be granted in dismissing his operative complaint.[7]

---

[7] In the amended complaint, Plaintiff criticizes the Report recommending the dismissal of his original complaint and Judge Wilson's Order adopting the Report because it dismissed his claims against Defendants in their official capacities in their entirety because they were barred by the Eleventh Amendment, even though he had also included claims for declaratory and injunctive relief in his complaint. *See* (*id.* ¶18). It appears from a review of the docket that Judge Carlson had recommended that Plaintiff's claims for monetary damages against Defendants in their

*(footnote continued on next page)*

In conclusion, Plaintiff's claims against Blake and Adams in their official capacities (to the extent he seeks monetary damages) are barred by the Eleventh Amendment, and his official-capacity claims for prospective declaratory and injunctive relief as well as his individual-capacity claims will be dismissed for the failure to state plausible claims for lack of access to the courts.

### F.    Plaintiff's Claims Against Governor Wolf, Governor Shapiro and Henry

Plaintiff has asserted Section 1983 individual- and official-capacity claims against former Governor Wolf, Governor Shapiro, and Henry essentially based on their roles in employing Blake and Adams. (*Id.* ¶¶ 8–10.) He alleges that if they submit affidavits indicating that they did not approve of Blake and Adams's methods of mailing him documents in *Wyatt I & II*, he will dismiss them from the amended complaint. (*Id.*) The Court will also dismiss these claims.

---

official capacities be dismissed, *see Wyatt II*, Doc. 22 at 9–11, and Judge Wilson dismissed those official-capacity claims in their entirety, *see id.*, Doc. 23 at 2. Nevertheless, even if the dismissal of Plaintiff's claims for injunctive or declaratory relief against Defendants in their official capacities was somehow in error, the constitutional claims underlying those requests for relief were ultimately dismissed. As such, Plaintiff suffered no injury from the dismissal of those official-capacity claims.

### 1.    Section 1983 Official-Capacity Claims for Monetary Damages Against Defendants

To the extent that Plaintiff has asserted Section 1983 claims for monetary damages against these Defendants, the Eleventh Amendment bars them for the reasons stated in dismissing Plaintiff's similar claims against Blake and Adams.

### 2.    Section 1983 Official-Capacity Claims for Prospective Declaratory or Injunctive Relief Against Former Governor Wolf

To the extent Plaintiff seeks prospective declaratory or injunctive relief against former Governor Wolf, those claims will be dismissed because Plaintiff cannot obtain declaratory or injunctive relief against the former Governor. *See Tatel v. Mt. Lebanon Sch. Dist.*, No. 22-cv-837, 2024 WL 4362459, at *50 (W.D. Pa. Sept. 30, 2024) ("There is no need to issue declaratory relief against [former school district superintendent and former assistant superintendent] because both of them are retired."); *Cook v. Corbett*, No. 14-cv-5895, 2015 WL 4111692, at *12 (E.D. Pa. July 8, 2015) (concluding claim seeking injunctive relief against former governor was moot because he left office); *Bey v. Pa. Dep't of Corr.*, 98 F. Supp. 2d 650, 658 (E.D. Pa. 2000) (determining that plaintiff's official-capacity claim for injunctive relief against former prison Superintendent was moot); *see also Andela v. Admin. Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014)

(unpublished) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

> **3.    Section 1983 Individual-Capacity Claims Against Defendants and Official-Capacity Claims for Prospective Declaratory or Injunctive Relief Against Governor Shapiro and Henry**

As indicated above, Plaintiff has not alleged that Governor Wolf, Governor Shapiro, or Henry committed any acts to directly violate his constitutional rights. Instead, his claims against them are solely supervisory in nature. To the extent Plaintiff is asserting Section 1983 claims against these Defendants based merely on allegations that they supervised Blake or Adams, he cannot do so because liability under Section 1983 cannot be predicated on respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her §1983 claims on a respondeat superior basis." (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)) (emphasis omitted)); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his §1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if Plaintiff seeks to hold these Defendants liable for

unconstitutional acts by their alleged subordinates, his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3)

the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had

contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Here, Plaintiff's allegations do not satisfy the second theory of supervisory liability because there are no allegations that Governor Wolf, Governor Shapiro, or Harry participated in violating his rights, directed Adams or Blake to violate them, or, despite knowing what was happening with Plaintiff's incoming mail, acquiesced in any violation. In addition, Plaintiff's allegations do not satisfy the first theory of supervisory liability because he has not identified a policy, practice, or custom they established. Moreover, Plaintiff has failed to state a plausible claim under either theory of supervisory liability because he has not shown that his right of access to the courts has been violated. Accordingly, the Court will dismiss these claims for Plaintiff's failure to state a plausible claim for relief.

## G.    Leave to Amend

Having determined that Plaintiff's claims against Defendants in his amended complaint are subject to dismissal, the Court must decide whether to grant him leave to file a second amended complaint. Although district courts should generally give leave to amend, they may dismiss a complaint

with prejudice where leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

In this case, the Court will not grant Plaintiff leave to file a second amended complaint because doing so would be futile. There are no allegations that Plaintiff could include in a second amended complaint which would allow his claims against Defendants to move forward. He cannot assert Section 1983 claims against the Cities of Harrisburg and Mechanicsburg simply because the individual Defendants allegedly work in those locations. He also cannot proceed with a class action or bring claims

- 50 -

on behalf of other state inmates. In addition, he is not entitled to a *Bivens* remedy for any claims against Judges Wilson and Carlson and even if such a remedy was recognized, he cannot bring a *Bivens* claim against them in their official capacities and judicial immunity bars his claims against them in their individual capacities. Furthermore, Plaintiff's Section 1983 official-capacity claims against Blake, Adams, Governor Wolf, Governor Shapiro, and Harry, to the extent they are not barred by the Eleventh Amendment or moot, fail to state a plausible claim because, *inter alia*, his allegations do not establish that any constitutional violation occurred. Accordingly, although the Court will dismiss without prejudice Plaintiff's Section 1983 official-capacity claims insofar as they are barred by the Eleventh Amendment, *see, e.g.*, *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (explaining that "Eleventh Amendment immunity is a threshold, nonmerits issue that does not entail any assumption by the court of substantive law-declaring power, and a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice" (internal citations and quotation marks omitted)), he may not replead those claims. All other claims will be dismissed with prejudice.

## IV.    CONCLUSION

Based on the aforesaid, the Court will dismiss the amended complaint without granting Plaintiff leave to file a second amended complaint. An appropriate Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 2/18/25

23-cv-0509-01